IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Sarah O., | ) |
| | ) |
|     *Plaintiff*, | ) |
| | ) Case No. 3:20-cv-50229 |
| v. | ) |
| | ) Magistrate Judge Lisa A. Jensen |
| Kilolo Kijakazi, | ) |
| Acting Commissioner of Social Security,[1] | ) |
| | ) |
|     *Defendant*. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Sarah O. brings this action under 42 U.S.C. § 405(g) seeking reversal or a remand of the decision denying her social security benefits.[2] For the reasons set forth below, the Commissioner's decision is reversed, and this case is remanded.

**I. Background**

In September 2016, Plaintiff filed applications for disability insurance benefits and supplemental security income alleging a disability beginning on September 24, 2015 because of bipolar disorder, anxiety disorder, panic disorder, and obsessive-compulsive disorder. R. 171. Plaintiff was 37 years old at the time she filed her applications. Plaintiff, who has been receiving mental health treatment intermittently since she attempted suicide in 1994, was diagnosed with bipolar disorder in 2008.

Between 1998 and 2015, Plaintiff held two jobs working in a factory as a conveyor feeder and production machine tender. At Plaintiff's most recent job as a production machine tender, she

---

[1] Kilolo Kijakazi has been substituted for Andrew Marshall Saul. Fed. R. Civ. P. 25(d).
[2] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c).

was fired on her alleged onset date because she had an issue with a coworker. Plaintiff alleged that after she lost her job, her mental impairments got worse, and she was unable to continue working. Although Plaintiff worked as a driver for a delivery company for one day in November 2015, she quit because she could not perform her job duties due to anxiety.

Following a hearing, an administrative law judge ("ALJ") issued a decision in March 2019, finding that Plaintiff was not disabled. R. 52-61. The ALJ found that Plaintiff had the severe impairments of bipolar disorder and anxiety. The ALJ determined that Plaintiff's impairments did not meet or medically equal a listed impairment. The ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertion levels with certain non-exertional limits and could perform her past relevant work as a conveyor feeder and production machine tender.

Plaintiff appeals the ALJ's decision arguing that the ALJ made several errors in determining her mental RFC. Therefore, this Court will focus on the evidence relevant to the ALJ's evaluation of Plaintiff's mental functioning and RFC determination in the discussion below.

## II. Standard of Review

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). "An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021) (citations omitted). The reviewing court may not "reweigh the evidence, resolve debatable

evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

### III. Discussion

Plaintiff makes several arguments challenging the ALJ's RFC determination as insufficient to incorporate the full extent of her mental limitations, namely limitations relating to social interactions and concentration, persistence, and pace. Specifically, Plaintiff argues that the ALJ: (1) improperly discounted the opinion of her treating psychiatrist, Dr. Desiree Rahman; (2) failed to incorporate all limitations identified by the state agency reviewing psychologist, Dr. M. W. DiFonso; and (3) improperly discounted her subjective symptoms. The Court will first address Plaintiff's argument relating to Dr. DiFonso and the ALJ's RFC determination.

### A. RFC

When determining Plaintiff's mental limitations, the ALJ considered, and partially rejected, three opinions contained in the record. The ALJ did not call a medical expert to testify at the hearing. The ALJ gave "little weight" to the opinions from Plaintiff's treating psychiatrist, Dr. Rahman, and her treating therapist, Christina Bieche. The ALJ gave "fair weight" to the opinion from the state agency reviewing psychologist, Dr. DiFonso.

In June 2017, Dr. DiFonso reviewed Plaintiff's medical records and affirmed the prior assessments made by the psychologists in March 2017 that Plaintiff had depressive, bipolar, anxiety, and obsessive-compulsive disorders. R. 158. He found that Plaintiff had moderate limitations relating to concentration and persistence, social interaction, and adaption. R. 160-161. Specifically, Dr. DiFonso found moderate limitations in Plaintiff's ability to: carry out detailed instructions; maintain attention and concentration for extended periods; work in coordination with

or in proximity to others without being distracted; complete a normal workday without interruptions from psychologically based symptoms and perform at a consistence pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers; maintain socially appropriate behavior; and travel in unfamiliar places. In the narrative portion of the assessment, Dr. DiFonso opined that Plaintiff's "mental status is stable" with treatment and treatment compliance, noting that although there are reports of breakthrough symptoms these were primarily related to psychosocial stressors and Plaintiff's symptoms stabilized with treatment compliance. R. 162. Accordingly, Dr. DiFonso found that Plaintiff "retains the functional capacity to engage in reduced stress simple and routine unskilled vocational activities of a 1 and 2 step requirement. Limited direct and demanding social interactions with general public is recommended." R. 162.

The ALJ gave "fair weight" to Dr. DiFonso's opinion because "it was consistent with the medical evidence of record." R. 60. This was the extent of the ALJ's evaluation of Dr. DiFonso's opinion, other than to note that she "offered a more nuanced mental residual functional capacity due to a more complete medical record and claimant testimony." *Id.* Based on this, the ALJ determined that Plaintiff had the RFC to perform:

> a full range of work at all exertional levels but with the following nonexertional limitations: can learn, understand, remember, and carry out simple and detailed work instructions with no more than occasional changes in the work; no more than occasional decision making; no work in a team environment or tandem task work; no more than occasional brief and superficial work with coworkers; no work in customer service or with the public; and with these abilities would adequately be able to sustain the concentration, persistence, and pace of the work activities in two-hour increments throughout the typical workday.

R. 56.

Plaintiff argues that the ALJ failed to provide any logical explanation for dismissing Dr. DiFonso's moderate "check-box" limitations relating to concentration, social interaction, and adaption, as well as his narrative explanation of those limitations. The Commissioner argues that Plaintiff has not shown a conflict between Dr. DiFonso's moderate checkbox limitations and the RFC, which the Commissioner argues exceeds the restrictions outlined in Dr. DiFonso's narrative summary. However, a review of Dr. DiFonso's narrative summary shows that the ALJ declined to include limitations for: reduced stress, simple, unskilled, and 1 to 2 step tasks. Yet, the ALJ's decision does not sufficiently explain the reasons for excluding these limitations. Although the ALJ's failure to include limitations for simple, unskilled, and 1 to 2 step tasks is arguably harmless because one of the jobs the ALJ identified, conveyor feeder, meets these requirements, the ALJ still failed to include a limitation for "reduced stress."

A claimant's RFC is the maximum work that she can perform despite any limitations. *See* 20 C.F.R. § 404.1545(a)(1); Social Security Ruling 96-8p, 1996 WL 374184, at *2. "Although the responsibility for the RFC assessment belongs to the ALJ, not a physician, an ALJ cannot construct his own RFC finding without a proper medical ground and must explain how he has reached his conclusions." *Amey v. Astrue*, No. 09 C 2712, 2012 WL 366522, at *13 (N.D. Ill. Feb. 2, 2012).

Dr. DiFonso did not define what a "reduced stress" work environment would look like for Plaintiff. Accordingly, without further explanation from the ALJ, it is not clear to the Court whether any of the limitations the ALJ adopted were intended to provide for a reduced stress work environment. One limitation the ALJ included in the RFC that often deals with workplace adaption, and possibly workplace stress, is the limitation to "no more than occasional changes in the work." R. 56. However, the ALJ explicitly stated that this limitation was included to

5

accommodate Plaintiff's side effects from her medications, which the record reveals is mostly severe drowsiness. R. 59.

Tellingly, the Commissioner argues that the RFC includes limitations for "workplace stress," Def.'s Resp. at 4, Dkt. 28, but erroneously states that the ALJ limited Plaintiff to "tasks free of fast-paced production requirements." Def.'s Resp. at 2, Dkt. 28. Such a limitation would likely reduce Plaintiff's stress at work, but no such limitation was provided here. *See* R. 56. This is significant because Dr. DiFonso found that despite Plaintiff's mental impairments, she could maintain the ability to concentrate and keep pace but only in a reduced stress work environment. There is evidence throughout the record that Plaintiff's is susceptible to external stressors and that such stress often brings on episodes of mania and depression. R. 98. Plaintiff also testified at the hearing that in both of her prior jobs, her roommate always worked at the same jobs as her and "always picked up the slack if I wasn't able, if I was having a hard time." R. 107. The ALJ merely disregarded this line of evidence, omitting to comment one way or the other on why this evidence did not support Dr. DiFonso's restriction for workplace stress. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. *See* Social Security Ruling 96-8p, 1996 WL 374184, at *7. Here, the ALJ gave Dr. DiFonso's opinion fair weight, yet provided no explanation for opting not to include his restriction for workplace stress. Thus, a remand is required for the ALJ to explain his reasons.

In light of this remand, the ALJ should also take the opportunity to explicitly address Dr. DiFonso's limitations for work that was simple, unskilled, and only required 1 to 2 step tasks. The ALJ clearly did not adopt these limitations but did not explain why he opted not to incorporate them into the RFC. "While a mild, or even a moderate, limitation in an area of mental functioning does not *necessarily* prevent an individual from securing gainful employment, [ ] the ALJ must

6

still affirmatively *evaluate* the effect such mild limitations have on the claimant's RFC." *Simon-Leveque v. Colvin*, 229 F. Supp. 3d 778, 787 (N.D. Ill. 2017) (emphasis in original) (internal citation omitted). Accordingly, on remand, the ALJ should support her reasons for not including any of the restrictions identified by Dr. DiFonso into the RFC. The ALJ shall then explicitly address all of Plaintiff's medically supported limitations in both the RFC and in the hypothetical to the VE to determine whether Plaintiff can perform her past work or if there are other jobs that exist in significant numbers that Plaintiff can perform.

### B. Subjective Symptoms

Plaintiff argues that the ALJ erred in rejecting her credibility concerning the severity of her mental impairments. An ALJ must justify her evaluation of a plaintiff's subjective allegations with "specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013). "Because the ALJ is in the best position to determine a witness's truthfulness," an ALJ's assessment should not be overturned "unless it is patently wrong." *Morrison v. Saul*, 806 F. App'x 469, 474 (7th Cir. 2020) (unpublished) (citing *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012)). An ALJ's assessment is patently wrong if the decision lacks any explanation or support. *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). Not all of the ALJ's reasons must be valid in a subjective symptom analysis, "as long as *enough* of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009) (unpublished) (emphasis in original).

Here, the ALJ listed several reasons to find that Plaintiff's subjective symptoms were not as severe as she alleged. The ALJ identified gaps in treatment, that treatment focused on external stressors, Plaintiff's ability to go on job interviews in contradiction of her reports of social isolation, Plaintiff's use of medications on an "as-needed basis rather than as they were prescribed," and Plaintiff's failure to present to the emergency room despite complaints of

7

worsening symptoms. The Court finds that the ALJ did not provide sufficient reasons or support for discrediting Plaintiff's subjective symptoms.

Although a history of sporadic treatment can undermine a plaintiff's subjective allegations, an ALJ must consider the possible reasons for the lack of treatment. *Deborah M. v. Saul*, 994 F.3d 785, 790 (7th Cir. 2021). Examples of "good reasons" may include an inability to afford treatment or ineffectiveness of further treatment. *See Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012). None of these reasons were explored here, despite several references in the record to Plaintiff's inability to meet her co-pay, fill prescriptions, or find a therapist because of Medicaid. *See, e.g.*, R. 356, 398, 409, 414. As to external stressors, without further explanation from the ALJ, it is unclear how she used this evidence to discount Plaintiff's symptoms where she did not find that such stressors were temporary or would otherwise abate such that they would not affect Plaintiff's functional limitations.

The ALJ's assessment of Plaintiff's ability to go on job interviews is an overreach where there is no evidence in the record that Plaintiff was successful in her attempts. Plaintiff testified that she was not called back after her interviews and "started to feel very overwhelmed and shut down." R. 84. Plaintiff was even prescribed medication as needed for "social anxiety for interviews and other anxiety provoking social situations" but was told not to drive on the medication or engage in other activities that require alertness, coordination, or balance. R. 379.

As for Plaintiff's use of medications, the ALJ misunderstood how Plaintiff uses her medications. Plaintiff testified, and her treatment notes confirmed, that Dr. Rahman generally prescribed Plaintiff Abilify on an as needed basis to combat worsening symptoms and manic episodes. *See, e.g.*, R. 446-47, 449. This was in part because Plaintiff often complained that Abilify caused her to become extremely drowsy and unmotivated, so she only took Abilify, or an

8

increased dose of Abilify, as needed to combat increased symptoms. Without addressing this evidence, the ALJ characterized Plaintiff's use of medications as "selective" or contrary to what was prescribed. R. 58-59. Although there is evidence in the record that Plaintiff was not always compliant with her medications, this alone is not enough to support the ALJ's reasoning without further explanation.

Lastly, the Seventh Circuit has warned ALJs against relying on a plaintiff's failure to seek emergency medical care as evidence of the severity of a symptom or condition. *See Goins v. Colvin*, 764 F.3d 677, 679-80 (7th Cir. 2014). Ms. Bieche's treatment plan explicitly informed Plaintiff of appropriate use of the crisis hotline when needed and there is no other indication in the record that Plaintiff should have sought emergency care as opposed to seeking psychiatric care from her treaters. R. 433; *see Pratt v. Colvin*, No. 12 C 8983, 2014 WL 1612857, at *7 (N.D. Ill. Apr. 16, 2014) (finding it improper to discount claimant's credibility based on a lack of an attempt to seek certain treatment where there is no evidence that such treatment was recommended or would have been effective). Accordingly, it was improper for the ALJ to consider as evidence the fact that Plaintiff had not presented to the emergency room for her worsening symptoms.

Although the Court is not finding that the ALJ should have found Plaintiff's subjective allegations fully credible, "[g]reater elaboration and explanation is necessary to ensure a full and fair review of the evidence." *Dawn P. v. Berryhill*, No. 17 C 4707, 2019 WL 339603, at *7 (N.D. Ill. Jan. 28, 2019). On remand, the ALJ shall reevaluate Plaintiff's subjective symptom allegations pursuant to Social Security Ruling 16-3p, 2017 WL 5180304, and fully explain and support her conclusions.

### C. Treating Psychiatrist's Opinion

The final issue raised by Plaintiff is that that the ALJ improperly discounted Dr. Rahman's opinion offered in the Mental RFC Assessment. Having found that a remand is warranted for a new RFC determination on the first two issues addressed, the Court finds it unnecessary to address this remaining argument. However, Plaintiff should raise any of her concerns with the ALJ on remand.

In remanding this case, the Court is not indicating that the issues raised in this appeal must be resolved in a particular way or that they will all turn out to be material, but rather that they should be explored more thoroughly. All these issues should be considered in a comprehensive analysis on remand with more explicit analysis by the ALJ.

## IV. Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment is granted, and the Commissioner's motion is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceeding consistent with this opinion. This Court declines to order a finding of disability based on the record before it. It is more appropriate to remand to the ALJ to properly evaluate the evidence as outlined above and issue a new decision.

Date: December 13, 2021      By:     *Lisa A. Jensen*
                                         Lisa A. Jensen
                                         United States Magistrate Judge